1

2

3

4

5

6

7

8                    UNITED STATES DISTRICT COURT

9                   EASTERN DISTRICT OF CALIFORNIA

10

11  BURGETT, INC.,                      No. 2:11-cv-01554-MCE-JFM

12          Plaintiff,

13      v.                              MEMORANDUM AND ORDER

14  AMERICAN ZURICH INSURANCE
    COMPANY,

15
            Defendant.
16

17                       ----oo0oo----

18

19      This matter arises out of Plaintiff, Burgett Inc.'s

20  ("Plaintiff" or "Burgett") motion for partial summary judgment

21  regarding Defendant's alleged duty to defend the underlying

22  action filed against Plaintiff by Persis International Inc.[1] and

23  Edward F. Richards (collectively, "Persis").

24  ///

25  ///

26  ─────────────────────
        [1] Persis Internationl, Inc. v. Burgett, Inc., 1:09-cv-07451
27  (N.D. Ill. 2011).  Plaintiff attached the relevant complaint in
    the underlying action to its complaint.  (See Pl.'s Compl., filed
28  June 08, 2011, [ECF No. 1, Ex. 2].)

                                1

Defendant, American Zurich Insurance, Inc. ("Defendant"),
Plaintiff's general liability insurance carrier opposes the
motion.  For the reasons set forth below, Plaintiff's motion is
GRANTED.[2]


**BACKGROUND**[3]


Plaintiff is a corporation organized under the laws of the
State of California with its principal place of business in
Sacramento, California.  (UF ¶ 1.)  Defendant is a corporation
licensed to sell insurance in the State of California, with its
principal place of business in Illinois.  (UF ¶ 2.)

Zurich issued to Burgett, the named insured, a general
commercial liability policy for the period May 9, 2003, through
May 9, 2004.  (UF ¶ 3.)  This policy provides indemnity for any
personal or advertising injury caused by an offense committed by
Burgett during the policy period and promises a defense of suits
that potentially seek those types of damages.  (UF ¶ 4.)

---

[2] Because oral argument will not be of material assistance,
the Court orders these matters submitted on the briefs.  E.D.
Cal. L.R. 78-230(h).

[3] This case presents almost purely legal issues.  Thus, the
facts are, for the most part, undisputed.  Where the facts are
disputed, the Court recounts Defendant's version of the facts as
it must on a motion for summary judgment.  In this regard, the
Court notes that, although not required by the Court's local
rules, Plaintiff did not file a separate statement of "Disputed
Facts."  Thus, in laying out the relevant facts, the Court cites
to Plaintiff's statement of undisputed fact.  (See Pl.'s Separate
Stmt. Of Undisp. Material Fact ["UF"], filed July 7, 2011, [ECF
No. 8-2].)  Moreover, the Court, when necessary, cites to the
declaration of Tom Lagomarsino, Vice President of Burgett, and
the exhibits attached thereto.  (Decl. Of Tom Lagomarsino
["Lagomarisino Decl."], filed July 7, 2011, [ECF No. 8-3].)

1    According to the relevant language of the policy,

2  "'[a]dvertisement' means a notice that is a broadcast published

3  to the general public of specific market segments of

4  [Plaintiff's] goods, products or services for the purpose of

5  attracting customers or supporters."[4]  (UF ¶ 5.)  Personal or

6  advertising injury encompasses "[o]ral or written publication, in

7  any manner, of material that slanders or libels a person or

8  organization or disparages a person's organizations's good,

9  products or services."  (Id.)  The policy also includes an

10  exclusion for "'personal and advertising' injury arising out of

11  the infringement of copyright, patent, trademark trade secret or

12  other intellectual property."  (UF ¶ 6.)

13    In the matter underlying this duty to defend action, Persis

14  filed a first amended complaint on March 26, 2010, in the

15  Northern District of Illinois, alleging that Plaintiff made false

16  statements to another company, Samick, about its ownership of the

17  "SOHMER" trademark, a trademark Persis alleges it owned.  (UF

18  ¶¶ 8-9.)  The Persis complaint, in pertinent part, alleges as

19  follows:

20  ///

21  ///

22  ///

23  ///

24  ///

25  ///

26

27    [4] There is no dispute that the allegedly improper statement
made by Burgett constitutes an advertisement in accordance with
28  the terms of the policy.

1
2

> In 2003, Samick began advertising and selling pianos
> bearing the SOHMER and SOHMER & CO. trademarks in the
> United States, including through an [i]nternet website.

3
4
5
6
7
8

> At all relevant times, Burgett's representing to samick
> that it had valid and enforceable rights in and to the
> SOHMER trademark, negotiating and entering into the
> purported licensing agreement with Samkick, accepting
> compensation from Samick under the purported licensing
> agreement, and holding itself out to Samick and the
> world as the rightful owner of the SOHMER trademark,
> constituted an inducement of Samick's act of
> infringement and unfair competition under federal and
> common law.

9   (UF ¶ 11.)  The gravamen of Persis' underlying complaint is that

10  by "holding itself out to Samick and the world as the rightful

11  owner of the SOHMER trademark...Burgett is contributorily liable

12  for Samick's acts of trademark infringement and unfair

13  competition under federal law and common law arising out of

14  Samick's use of SOHMER & SOHMER & CO. trademarks."  (Id.)

15  There is no dispute that the alleged wrongful conduct occurred

16  within Defendant's 2003, 2004 and 2005 policy periods.

17  (UF ¶ 12.)

18      Plaintiff provided Defendant notice of the Persis action on

19  November 3, 2010, thereby tendering defense of that matter in

20  accordance with the terms of the policy.  (UF ¶ 13.)  Zurich

21  responded on December 13, 2010, declining to defend or indemnify

22  Plaintiff in the underlying Persis action.  (UF ¶ 15.)  Defendant

23  denied defense of the action on the basis that "the definition of

24  'personal and advertising injury' ha[d] not been met" and because

25  the trademark exclusion under the policy would apply to excuse

26  Defendant from defending the action.  (UF ¶ 16.)

27  ///

28  ///

1

2

**STANDARD**

3       A motion for partial summary judgment is resolved under the

4  same standard as a motion for summary judgment.  See California

5  v. Campbell, 138 F.3d 772, 780 (9th Cir. 1998).  Summary judgment

6  is appropriate when it is demonstrated that there exists no

7  genuine issue as to any material fact, and that the moving party

8  is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c);

9  Adickes v. S.H. Kress & Co., 398 U.S. 144, 157 (1970).

10           Under summary judgment practice, the moving party
             always bears the initial responsibility of informing
11           the district court of the basis of its motion, and
             identifying those portions of "the pleadings,
12           depositions, answers to interrogatories, and admissions
             on file together with the affidavits, if any," which it
13           believes demonstrate the absence of a genuine issue of
             material fact.
14

15  Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).  "[W]here the

16  nonmoving party will bear the burden of proof at trial on a

17  dispositive issue, a summary judgment motion may properly be made

18  in reliance solely on the 'pleadings, depositions, answers to

19  interrogatories, and admissions on file.'"  Id. at 324.  Indeed,

20  summary judgment should be entered against a party who fails to

21  make a showing sufficient to establish the existence of an

22  element essential to that party's case, and on which that party

23  will bear the burden of proof at trial.  Id. at 322.  In such a

24  circumstance, summary judgment should be granted, "so long as

25  whatever is before the district court demonstrates that the

26  standard for entry of summary judgment, as set forth in

27  Rule 56(c), is satisfied."  Id. at 323.

28  ///

5

1    If the moving party meets its initial responsibility, the
2  burden then shifts to the opposing party to establish that a
3  genuine issue as to any material fact actually does exist.
4  Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574,
5  585-87 (1986); First Nat'l Bank v. Cities Serv. Co., 391 U.S.
6  253, 288-289 (1968).  In attempting to establish the existence of
7  this factual dispute, the opposing party may not rely upon the
8  denials of its pleadings, but is required to tender evidence of
9  specific facts in the form of affidavits, and/or admissible
10  discovery material, in support of its contention that the dispute
11  exists.  Fed. R. Civ. P. 56(c).  The opposing party must
12  demonstrate that the fact in contention is material, i.e., a fact
13  that might affect the outcome of the suit under the governing
14  law, Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986),
15  and that the dispute is genuine, i.e., the evidence is such that
16  a reasonable jury could return a verdict for the nonmoving party,
17  Id. at 251-52.

18    In the endeavor to establish the existence of a factual
19  dispute, the opposing party need not establish a material issue
20  of fact conclusively in its favor.  It is sufficient that "the
21  claimed factual dispute be shown to require a jury or judge to
22  resolve the parties' differing versions of the truth at trial."
23  First Nat'l Bank, 391 U.S. at 289.  Thus, the "purpose of summary
24  judgment is to 'pierce the pleadings and to assess the proof in
25  order to see whether there is a genuine need for trial.'"
26  Matsushita, 475 U.S. at 587 (quoting Rule 56(e) advisory
27  committee's note on 1963 amendments).
28  ///

6

1    In resolving the summary judgment motion, the Court examines

2  the pleadings, depositions, answers to interrogatories, and

3  admissions on file, together with the affidavits, if any. Rule 56(c);

4  SEC v. Seaboard Corp., 677 F.2d 1301, 1305-06 (9th Cir. 1982).

5  The evidence of the opposing party is to be believed, and all

6  reasonable inferences that may be drawn from the facts placed

7  before the court must be drawn in favor of the opposing party.

8  Anderson, 477 U.S. at 255.  Nevertheless, inferences are not drawn

9  out of the air, and it is the opposing party's obligation to

10 produce a factual predicate from which the inference may be drawn.

11 Richards v. Nielsen Freight Lines, 602 F. Supp. 1224, 1244-45

12 (E.D. Cal. 1985), aff'd, 810 F.2d 898 (9th Cir. 1987).

13    Finally, to demonstrate a genuine issue, the opposing party

14 "must do more than simply show that there is some metaphysical

15 doubt as to the material facts....Where the record taken as a

16 whole could not lead a rational trier of fact to find for the

17 nonmoving party, there is no 'genuine issue for trial.'"

18 Matsushita, 475 U.S. at 586-87, 106 S. Ct. at 1356.

19

20                              **ANALYSIS**

21    **A.   Duty to Defend**

22

23    Plaintiff contends that Defendant improperly denied defense

24 of the underlying Persis action because the complaint "alleges

25 misstatements by [Plaintiff] regarding Persis' legal rights to

26 the SOHMER trademark," thus providing "potential grounds for

27 liability within [Defendant's] 'peronal injury' coverage for both

28 'defamation' and 'disparagement.'"

7

1   (Pl.'s Mot. for Summ. J, filed July 07, 2011, [ECF No. 8], at

2   1:11-13.)  Defendant asserts that, "because the allegations in

3   the Persis lawsuit do not assert a claim for defamation or

4   disparagement, there was and is no duty to defend." (Def.'s

5   Opp'n, filed July 28, 2011, [ECF No. 10], at 1:26-28)  Similarly,

6   Defendant maintains that there is no conceivable theory which

7   could bring the allegations in the underlying complaint within

8   the coverage pursuant to the policy because Plaintiff's alleged

9   statements to Samick that it owned the SOHMER trademark did not

10  specifically reference Plaintiff, and thus, Plaintiff is not

11  potentially liability for disparagement or defamation.  Moreover,

12  Defendant argues that it has no duty to defend because the

13  trademark exclusion would apply to bar any coverage for liability

14  based on the specific claims asserted in the underlying

15  complaint.

16      An insurer's evidentiary burden is particularly high in a

17  duty-to-defend case.  While "the insured must prove the existence

18  of a potential for coverage,...the insurer must establish the

19  absence of any such potential." Montrose Chem. Corp. v. Super.

20  Ct., 6 Cal. 4th 287, 300 (1993).  "In other words, the insured

21  need only show that the underlying claim may fall within policy

22  coverage; the insurer must prove it cannot." Id.

23      The duty to defend extends to all suits that raise the

24  "possibility" or "potential" for coverage. Gray v. Zurich Ins.

25  Co., 65 Cal. 2d 263, 275 (1966); accord Montrose, 6 Cal. 4th at

26  295 (1993); CNA Cas. of Cal. v. Seaboard Sur. Co., 176 Cal. App.

27  3d 598, 606 (1986).

28  ///

1  Courts in California have frequently stated that an insurer's

2  duty to defend is broader than the duty to indemnify.  Horace

3  Mann Ins. Co. v. Barbara B., 4 Cal. 4th 1076, 1081 (1993). Thus,

4  under California law, an insurer must defend against groundless,

5  false, or even fraudulent claims, regardless of their merits.

6  Horace Mann, 4 Cal. 4th at 1086.  In fact, an insurer is excused

7  from its duty to defend only when "the third party complaint can

8  by no conceivable theory raise a single issue which could bring

9  it within the policy coverage." Montrose, 6 Cal. 4th at 295

10  (quoting Gray v. Zurich Ins. Co., 65 Cal. 2d 263, 275 n.15

11  (1966)).  The duty to defend may exist even where coverage is in

12  doubt and ultimately does not develop.  Id. at 295 (quoting

13  Saylin v. Cal. Ins. Guar. Ass'n, 179 Cal. App. 3d 256, 263

14  (1986)).

15      "The determination whether the insurer owes a duty to defend

16  is usually made in the first instance by comparing the

17  allegations of the complaint with the terms of the policy."

18  Storek v. Fid. & Guar. Ins. Underwriters, Inc., 504 F. Supp. 2d

19  803, 807 (N.D. Cal. 2007) aff'd, 320 F. App'x 508 (9th Cir. 2009)

20  (quoting Horace Mann, 4 Cal. 4th at 1081).  "Any doubt as to

21  whether the facts give rise to a duty to defend is resolved in

22  the insured's favor." Horace Mann, 4 Cal. 4th at 101 (citing CNA

23  Cas,, 176 Cal. App. 3d at 607).  The duty to defend extends

24  beyond the specific claims set forth in the third-party

25  complaint. Indeed, "the duty to defend is so broad that as long

26  as the complaint contains language creating the potential of

27  liability under an insurance policy, the insurer must defend an

28  action against its insured...."

CNA Cas., 176 Cal. App. 3d at 606.  "California courts have repeatedly found that remote facts buried within causes of action that may potentially give rise to coverage are sufficient to invoke the defense duty."  Pension Trust Fund for Operating Eng'rs v. Fed. Ins. Co., 307 F.3d 944, 951 (9th Cir. 2002).

An insurer's duty to defend is not limited to the face of the underlying complaint.  Rather, "the duty to defend arises when the facts alleged in the underlying complaint give rise to a potentially covered claim regardless of the technical legal cause of action pleaded by the third party."  Barnett v. Fireman's Fund Ins. Co., 90 Cal. App. 4th 500, 510 (2001); see also Swain v. Cal. Cas. Ins. Co., 99 Cal. App. 4th 1, 8 (2002) (emphasizing the importance of examining facts alleged in the complaint).  In addition, "facts extrinsic to the complaint also give rise to a duty to defend when they reveal a possibility that the claim may be covered by the policy."  Horace Mann, 4 Cal. 4th at 1081.  "In determining whether or not the [insurer is] bound to defend...courts do not examine only the pleaded word but the potential liability created by the suit."  Gray, 65 Cal. 2d at 276.  Courts have noted that because "modern procedural rules focus on the facts of a case rather than the theory of recovery in the complaint, the duty to defend should be fixed by the facts which the insurer learns from the complaint, the insured, or other sources.  An insurer, therefore, bears a duty to defend its insured whenever it ascertains facts which give rise to the potential of liability under the policy.  Id. at 276-77.

///

///

"[T]hat the precise causes of action pled by the third-party complaint may fall outside policy coverage does not excuse the duty to defend where, under the facts alleged, reasonably inferable, or otherwise known, the complaint could fairly be amended to state a covered liability." <u>Scottsdale Ins. Co. v. MV Transp.</u>, 36 Cal. 4th 643, 654 (2005).

While the duty to defend is broad, "[a]n insurer...will not be compelled to defend its insured when the potential for liability is tenuous and farfetched." <u>Lassen Canyon Nursery, Inc. v. Royal Ins. Co.</u>, 720 F.2d 1016, 1018 (9th Cir. 1983). In other words, the duty to defend does not require an insurer to undertake a defense as to claims that are factually and legally untethered from the third party's complaint. <u>See</u> <u>e.g.</u>, <u>Storek</u>, 504 F. Supp. 2d at 812; <u>Upper Deck Co. v. Fed. Ins. Co.</u>, 358 F.3d 608, 615-16 (9th Cir. 2004).

### 1.   Defamation

Under California law,[5] defamation consists of either libel or slander.  Cal. Civ. Code § 44.  "Libel is a false and unprivileged publication by writing, printing, picture, effigy, or other fixed representation to the eye, which exposes any person to hatred, contempt, ridicule, or obloquy, or which causes him to be shunned or avoided, or which has a tendency to injure him in his occupation."  Cal. Civ. Code § 45.

---

[5] There is no dispute that, in this diversity action, California law applies to determine the scope Defendant's duty to defend.

11

1    Slander consists of "a false and unprivileged publication, orally

2    uttered...which: (1) charges any person with crime, or with

3    having been indicted, convicted, or punished for crime;

4    (2) imputes in him the present existence of an infectious,

5    contagious, or loathsome disease; (3) tends directly to injure

6    him in respect to his office, profession, trade or business,

7    either by imputing to him general disqualification in those

8    respects which the office or other occupation peculiarly

9    requires, or by imputing something with reference to his office,

10   profession, trade, or business that has a natural tendency to

11   lessen its profits; (4) imputes to him impotence or a want of

12   chastity; or (5) which, by natural consequence, causes actual

13   damage.

14        The California Supreme Court, in adherence to United States

15   Supreme Court precedent, has held that "[i]n defamation actions

16   the First Amendment...requires that the statement on which the

17   claim is based must specifically refer to, or be 'of and

18   concerning' the Plaintiff in some way." Blatty v. New York Times

19   Co. 42 Cal. 3d 1033, 1042.  This limitation on defamation actions

20   "derives directly and ultimately from the First Amendment." Id.

21   Thus, in order to demonstrate that there is potential for

22   liability in the underlying Persis claim, Plaintiff must show

23   that there are factual allegations that it made specific

24   reference to Persis.  Id.

25   ///

26   ///

27   ///

28   ///

1    In this case, Defendant's duty to defend cannot be triggered

2  on a defamation theory because the underlying Persis complaint

3  does not allege that Plaintiff made any defamatory statement that

4  either specifically referred to, or was "of and concerning"

5  Persis.  Thus, there is no potential for coverage under the

6  Zurich policy for defamation because the "of and concerning"

7  element required to establish a claim for defamation is wholly

8  absent from the underlying complaint.  To this end, Defendant's

9  duty to defend is not triggered under that provision of the

10 Zurich policy covering "material that slanders or libels a person

11 or organization" because there is no potential for coverage

12 thereunder.

13   The case law relied on by Plaintiff for its contention that

14 there is a potential for coverage under the defamation provision

15 of the policy is wholly inapposite.  (See Pl.'s Mot at 914-19

16 (citing Atlantic Mutual Ins. Co. V. J. Lamb Inc., 100 Cal. App.

17 4th 1017 (2002); American Ins. Co. V. Laserage Tech. Corp.,

18 2 F. Supp. 2d 296, 304 (W.D.N.Y.); Winokur, Winokur v. Commerce

19 Ins. Co., 2004 WL 1588259 (Mass. Sup. Ct.).)  Specifically, in

20 each of those cases, the Plaintiff in the underlying action

21 specifically alleged that the Plaintiff made specific comments

22 "of and concerning" the Plaintiff in the underlying action.  In

23 Both J. Lamb[6] and Laserage, the underlying complaint alleged that

24 the party asserting a duty to defend made statements that the

25 underlying Plaintiff was infringing a trademark.

26

27     [6] In J. Lamb, the only California authority cited by
   Plaintiff, the Court did not find that the statements constituted
28 defamation; it only found that the allegations potentially stated
   a claim for disparagement.

13

Those courts held that there was potential coverage under the policy for advertising injury because the party seeking defense of the underlying action made overt statements specifically referencing plaintiffs and their business, according to the underlying complaint.  Moreover, in <u>Winokur</u>, the court held that there was potential coverage under the advertising injury provisions of the relevant policy for charging the "underlying Plaintiff and its officers and directors with malicious abuse of process, malicious interference with advantageous business relationship, and conspiracy."  <u>Winokur</u>, 2004 WL 1588259 at *1. Filing a lawsuit naming the underlying Plaintiff clearly satisfies the specific reference requirement for stating a defamation claim.  Conversely, in this case, Plaintiff has failed to demonstrate the underlying complaint meets the specific reference requirement, and thus, there is no factual or legal basis for Plaintiff's contention that there is potential coverage under the defamation provision of the policy.


### 2.   Disparagement

At its base, an action for product disparagement "involves the imposition of liability for injuries sustained through publication to third parties of a false statement affecting the plaintiff.  <u>Total Call Int'l Inc. v. Peerless Ins. Co.</u>, 181 Cal. App. 4th 161, 169 (2010) (quoting <u>Polygram Records Inc. v. Superior Court</u>, 170 Cal. App. 3d 543, 549 (1985).

///

14

Under California law, in order to establish a duty to defend, Burgett must show that the underlying Plaintiff alleges that it made derogatory statements about Persis products, causing it pecuniary damages.  Microtec Research Inc. v. Nationwide Mut. Ins. Co., 40 F.3d 968, 9472-973 (9th Cir. 1994); Truck Ins. Exchange v. Bennet, 53 Cal. App. 4th 75, 89 (1997).  A requisite element of a claim for disparagement is that the alleged disparaging publication specifically reference the plaintiff; this element can be met by either direct or indirect reference. E.piphany, Inc. V. St. Paul Fire & Marine Ins. Co., 590 F. Supp. 2d 1244, 1252-1253 (citing Blatty, 42 Cal. 3d at 1042).

In this case, Defendant's contention that there is no potential for coverage under the disparagement provision of the policy because the underlying complaint does not allege that Plaintiff specifically references Persis is unavailing.  Contrary to Defendant's assertion, the underlying complaint makes sufficient allegations that could potentially establish a claim for disparagement by implication.  Therefore, it was improper for Defendant to deny defense of the underlying Persis action.

E.piphany provides particularly insightful guidance. E.piphany was also a duty to defend case based on a nearly identical disparagement policy provision in which the underlying Plaintiff alleged that E.piphany released a public statement that it "offer[ed] the only full footprint CRM suite natively built on a service oriented J2EE architecture."  Id. at 1249 (emphasis added).  The underlying Plaintiff alleged that "[s]uch representations have caused E.pihpany to gain, and Sigma to lose, profits, market share, reputation, and goodwill."  Id. at 1250.

15

1   The court held that because E.piphany "falsely stated that it was
2   the 'only' producer of 'all java' and 'fully J2EE software
3   solutions,'" the allegations in the underlying complaint
4   demonstrated "a claim for disparagement by 'clear implication'"
5   Id. at 1253 (citing Blatty, 42 Cal. 3d at 1044 n.1).
6   Importantly, the E.piphany court relied on a similar case from
7   the Northern District of Illinois, the same district where the
8   underlying Persis action is pending, which held that a claim for
9   disparagement by implication may lie where a competitor claims
10  that is "more effective than or superior to...other drugs
11  available." See Knoll Pharmaceutical Co. v. Automobile Ins. Co.
12  Of Hartford, 152 F. Supp. 2d 1026, 1036 (N.D. Ill. 2001).

13       Similarly to the facts underlying E.pihphany, in this case,
14  Burgett represented to Samick that it was the only holder of the
15  SOHMER trademark.  In the underlying complaint, similar to the
16  underlying complaint in E.pihphany, Persis alleges that Plaintiff
17  made false representations that harmed Persis "by implying to the
18  marketplace that Burgett had the superior right to use the SOHMER
19  trademark," and thus, by implication, represented that Persis did
20  not have the rights to the SOHMER trademark.  (UF ¶ 11.)
21  Persis further alleges that Plaintiff's "willfull statements to
22  Samick and others regarding [Plaintiff's] use of the SOHMER
23  trademark, created a likelihood of confusion or of
24  misunderstanding as to the source, sponsorship or approval of
25  [Plaintiff's] and/or Persis goods, as well as...confusion of or
26  misunderstanding as to affiliation, connection or association of
27  [Plaintiff] and Persis."  (UF ¶ 11.)
28  ///

At the time of the alleged misrepresentations, Persis contends that Plaintiff "was fully aware that Persis was using the SOHMER trademark in commerce." (Pl.'s Compl., Ex 2 ¶ 41.)  The Court concludes that these allegations, taken as a whole, create potential liability and thus, potential coverage for disparagement of Persis' product —— the alleged ownership of the SOHMER trademark.

While E.piphany properly supports the finding of a potential claim for disparagement by implication, the cases relied on by Defendant —— Jarrow Formulas v. Steadfast Ins. Co, 2011 WL 1399805 (C.D. Cal. 2011); Total Call, 181 Cal. App. 4th 161. —— are easily distinguishable.  In both cases, the underlying plaintiff alleged that the party seeking defense falsely advertised the benefits of their products, which, in turn, deceived consumers, detrimentally affecting the reputation and goodwill of the market for that product type generally and the underlying plaintiffs specifically. Jarrow, 2011 WL 1399805 *2-3; Total Call, 181 Cal. App. 4th at 165-166.  In Jarrow, "as in Total Call International, the [c]ourt conclude[d] that this falls within the [p]olicy's exclusion for advertising injury arising out of 'the failure of goods products or services to conform with advertised quality or performance." Jarrow, 2011 WL 1399805 at *6.  Unlike these cases, Defendant does not contend that the allegations fall under any exclusion for false advertising. (See generally Def.'s Opp'n.)

///

///

///

17

1    Indeed, in <u>Jarrow</u>, the court expressly distinguished

2   <u>E.piphany</u> by pointing out that "the underlying complaint, brought

3   by [E.piphany's] direct competitors, alleged that the insured

4   stated that it was the <u>only</u> producer of a certain product,

5   resulting in damage to the competitor's market share, sales, and

6   reputation."  <u>Jarrow</u>, 2011 WL 1399805 at *7 (emphasis in

7   original).  Similarly here, the underlying complaint alleges that

8   Plaintiff misrepresented that it was the <u>only</u> owner of the SOHMER

9   trademark, "resulting in damage to [Persis'] market share, sales,

10  and reputation."  <u>Id.</u>  Moreover, in this case, a potential

11  finding of disparagement by implication is bolstered by the fact

12  that Persis alleges that it was the <u>only</u> owner of the SOHMER

13  trademark.

14    Given the factual and legal similarities between this case

15  and <u>E.piphany</u>, and since there is established precedent upholding

16  claims for disparagement by implication in the district in which

17  that action is pending, Plaintiff is potentially liable for

18  disparagement by implication.  Thus, in this case, where the

19  Court must resolve any question as to the duty to defend in the

20  insured's favor, the Court finds that the underlying complaint

21  alleges sufficient facts to establish the potential for coverage,

22  and thus, the duty to defend was triggered.  <u>Horace Mann</u>, 4 Cal.

23  4th at 101.

24  ///

25  ///

26  ///

27  ///

28  ///

18

1

2

### 3.    Trademark Exclusion

3          Defendant argues that "[a]ll of the causes of action in the
4    Persis lawsuit either allege trademark infringement directly
5    (first cause of action) or are dependent on the trademark
6    infringement."  As such, Defendant contends "the trademark
7    exclusion in the Zurich policy applies to preclude coverage for
8    all the claims in the Persis lawsuit."  (Def.'s Opp'n at 14:7-9.)
9    Defendant's position, however, ignores the relevant standard
10   applicable to an insurer's duty to defend.  Specifically, "Since
11   the modern procedural rules focus on the facts of the complaint
12   and extrinsic evidence, the duty to defend should be fixed by the
13   facts which the insurer learns from the complaint."  Gray,
14   65 Cal. 2d at 276.  Thus, the fact "that the precise causes of
15   action pled by the third-party complaint may fall outside policy
16   coverage does not excuse the duty to defend where, under the
17   facts alleged, reasonably inferable, or otherwise known, the
18   complaint could fairly be amended to state a covered liability."
19   Scottsdale Ins. Co. v. MV Transp., 36 Cal. 4th 643, 654 (2005).
20   As set forth above, while the underlying complaint does not
21   explicitly state a claim for disparagement, the Court finds that
22   the complaint could be amended to state a claim for the same.
23   Thus, the trademark exclusion does not apply to bar coverage.
24   ///
25   ///
26   ///
27   ///
28   ///

19

1   **B.   Attorneys' Fees and Prejudgment Interest**

2

3   Plaintiff contends that it is entitled to reasonable

4   attorneys' fees because Defendant has breached its duty to defend

5   the underlying Persis action.  Moreover, Plaintiff contends that

6   it is entitled to prejudgment interest.  Defendant does not

7   contest that Plaintiff is entitled to reasonable attorneys' fees

8   if the Court finds that it breached its duty to defend.  However,

9   Defendant does assert that Plaintiff is not entitled to

10  prejudgment interest because the amount of damages is in dispute

11  and has not been established.

12  Under California law, where an insurer wrongfully "refuse[s]

13  to defend an action against its insured...the insurer is liable

14  for the total amount of the fees" unless the insurer produces

15  undeniable evidence that it is not liable for all of the

16  attorney's fees."  Hogan v. Midland Nat'l Ins. Co., 3 Cal. 3d

17  553, 564 (1970).  When the underlying complaint states an injury

18  potentially covered by the insurance contract, the insurer

19  breaches its duty to defend by refusing to defend its insured.

20  Id. (citing Gray v. Zurich Ins. Co., 65 Cal. 2d 263).

21  Furthermore, "[a] liability insurer's breach of the duty to

22  defend results in the insurer's forfeiture of the right to

23  control defense of the action or settlement, including the

24  ability to take advantage of the protections and limitations set

25  forth in the statute governing liability insurers' duty to

26  provide independent counsel."  Intergulf Devel. v. Super. Ct.,

27  183 Cal. App. 4th 16 (2010).

28  ///

20

1    California Civil Code § 3287 provides that "[e]very person
2  who is entitled to recover damages certain, or capable of being
3  made certain by calculation, and the right to recover which is
4  vested in him upon a particular day, is entitled also to recover
5  interest thereon from that day...."  Under this code section,
6  "the court has no discretion, but must award prejudgment interest
7  upon request, from the first day there exists both a breach and a
8  liquidated claim."  <u>Howard v. Am. Nat. Fire Ins. Co.</u>, 187 Cal.
9  App. 4th 498, 535 (2010) (<u>quoting</u> <u>N. Oakland Med. Clinic v.</u>
10  <u>Rogers</u>, 65 Cal. App. 4th 824, 828 (1998)).  Courts generally
11  apply a liberal construction in determining whether a claim is
12  certain or liquidated.  <u>Id.</u> (<u>citing</u> <u>Chesapeake Indus., Inc. v.</u>
13  <u>Togova Enter., Inc.</u>, 149 Cal. App. 3d 901, 907 (1983)).  The test
14  for determining certainty under section 3287(a) is whether the
15  defendant knew the amount of damages owed to the claimant or
16  could have computed that amount from reasonably available
17  information.  <u>Id.</u> (<u>citing</u> <u>Chesapeake Indus., Inc.</u>, 149 Cal. App.
18  3d at 907)).  Uncertainty as to the defendant's liability is
19  irrelevant to the determination.  <u>Boehm & Assocs. v. Workers'</u>
20  <u>Comp. Appeals Bd.</u>, 76 Cal. App. 4th 513, 517 (1999).  "The
21  certainty required by section 3287(a) is not lost when the
22  existence of liability turns on disputed facts but only when the
23  amount of damages turns on disputed facts." <u>Howard</u>, 187 Cal. App.
24  4th at 536 (<u>citing</u> <u>Olson v. Cory</u>, 35 Cal. 3d 390, 402 (1983)).
25  ///
26  ///
27  ///
28  ///

21

1    Under California law, Plaintiff is entitled to reasonable
2 attorneys' fees as Defendant has breached its duty to defend by
3 failing to provide Plaintiff with a defense in the Persis action,
4 which states an injury potentially covered by the insurance
5 contract.  However, neither party has submitted any evidence that
6 would allow the Court to calculate the proper amount of fees it
7 should award.  Accordingly, the Court finds that Plaintiff is
8 entitled to reasonable attorneys' fees, but the amount of
9 attorneys' fees that Plaintiff is entitled to remains a question
10 of fact.  To this end, the Court requests additional briefing
11 from the parties as to the amount of attorneys' fees to which
12 Plaintiff is entitled

13    It is entirely unclear at this point whether Defendant knows
14 or is capable of computing the amount of damages that are
15 potentially owed to Plaintiff.  It is also unclear whether there
16 is reasonably available information about the amount of damages
17 potentially owed to Plaintiff.  Furthermore, it is likely that
18 the amount of damages will be disputed between the parties.
19 Thus, it is not appropriate for the Court to order prejudgment
20 interest at this time.

21

22                           **CONCLUSION**

23

24    For the foregoing reasons, Defendant's motion for summary
25 judgment is GRANTED. Specifically:

26    1.   Plaintiff's motion for summary judgment as to
27 Defendant's duty to defend the underlying Persis action is
28 GRANTED.

                                  22

2.    Plaintiff is awarded reasonable attorneys' fees for breach of its duty to defend the underlying Persis action. However, the Court requires additional briefing as to the amount of attorneys' fees to which Plaintiff is claiming. Such additional briefing from Plaintiff is to be filed not later than forty-five (45) days after this electronic order is filed.

3.    The Court orders that Plaintiff is not entitled to prejudgment interest.

IT IS SO ORDERED.

Dated: November 22, 2011

_____
MORRISON C. ENGLAND, JR.
UNITED STATES DISTRICT JUDGE